COSIMO A. CARLUCCI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85024. Filed January 15, 1962.

*Cosimo A. Carlucci,* pro se.

*Gerald N. Daffner, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax in the amount of $490.30 for the taxable year 1958. The petitioner having conceded that the respondent correctly disallowed a claimed deduction for dependents, the only issue for decision is whether the petitioner is entitled to deduct, as ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954,

amounts paid for tuition and other costs of attending university classes.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioner is a resident of Newark, New Jersey. His Federal income tax return for the taxable year 1958 was filed with the district director of internal revenue, Newark, New Jersey.

In 1949 the petitioner received a B.A. degree in psychology from Fordham University. In 1951 he received an M.A. degree in industrial psychology from Fordham University. From the time of receiving his B.A. degree, the petitioner intended to continue his studies and obtain a Ph. D. degree.

Shortly after receiving his master's degree in 1951, petitioner was employed by a research organization in Pittsburgh, Pennsylvania, as a research associate. This organization did psychological research for industries and Government. Although this was a research organization, the petitioner's duties were of the type normally performed by industrial psychologists.

In October 1952 the petitioner entered the United States Air Force where his designation was research psychologist. He was assigned to the Research Development Command at Randolph Air Force Base where he was engaged in personnel selection for Air Force crews. From May until October 1953, he was stationed overseas as a research officer with the Research Development Command. In May 1954 he was assigned to Newark, New Jersey, as chief psychologist for the induction service. In this capacity he administered psychological tests for inductees, enlistees, and for officer candidates. In September 1954, while he was still with the Air Force, the petitioner enrolled in courses at New York University in industrial psychology and evaluation of psychological testing. He was discharged from the Air Force in December 1955, but continued his studies at New York University.

In January 1956, petitioner was employed by the United States Government at Mitchel Air Force Base where he was engaged in the development of tests for promotion of enlistees.

In 1956 the petitioner matriculated at New York University and became a candidate for a Ph. D. degree in industrial psychology. The university accredited all courses taken by the petitioner after he was awarded an M.A. degree in industrial psychology in 1951.

In January 1957 the petitioner was employed in Newark, New Jersey, by the Prudential Insurance Company of America, as an assistant research analyst in the field of industrial psychology, and during the year in question and at the time of the hearing in this case he

was so employed. His duties consisted of carrying out project assignments, such as the making of an empirical classification of insurance agency managers for the purpose of obtaining a better basis for selecting such managers, and the development and validation of psychological tests for the selection of life insurance agents.

The Prudential Insurance Company has approximately 40 persons employed in psychological research. Of these, about 25 to 33 percent have doctoral degrees in industrial psychology, some of them having obtained such degrees before being employed by the insurance company. Those who do not have a doctorate are currently attending school to obtain a graduate degree. The petitioner's immediate group consisted of seven industrial psychologists, all engaged in the same type of work. The petitioner's immediate supervisor was a diplomate of the Industrial Division of the American Psychological Association,[1] which represents one of the highest attainments, if not the highest, in this field.

In 1958, while employed by the insurance company, the petitioner continued to take courses at New York University which would lead to obtaining a Ph. D. degree in industrial psychology. In that year he took 9 credit hours. The courses taken were in the general field of industrial psychology, such as statistics (which is needed in research), factor analysis, and design of experiments. At the time of the hearing, the petitioner had not obtained his Ph. D. degree, but expected to receive it in the near future.

A doctoral degree in industrial psychology represents a higher level of achievement in the field and results in some gain in status and recognition. The insurance company did not require that the petitioner obtain a doctoral degree as a condition to the retention of the position which he held. Nor was such a degree a prerequisite to promotion by the company, although it would increase the petitioner's chances of obtaining a promotion. The petitioner expected, as a result of this education, to receive some remuneration over the long term (although not necessarily immediately) either in the form of salary or promotion. The petitioner did not take any of the courses in 1958 for the purpose of qualifying himself as an industrial psychologist; he was qualified as such, and had been employed as such, ever since receiving his M.A. degree in 1951. His purpose was to keep abreast of current knowledge, literature, and thinking in the field of industrial

---

[1] Prerequisite to membership in the American Psychological Association is a master's degree with 5 years of experience, or a Ph. D. degree. There is also an organization known as the New Jersey Psychological Association which has similar prerequisites for membership. No examination is required for membership. It is not a governmental body, but is an association of psychologists organized for the purpose, among other things, of professional monitoring and the holding of professional meetings. The petitioner is not a member of either of these organizations, although he had been qualified for membership for some years prior to the year in question. He chose not to join before receiving his doctoral degree.

psychology, and maintain and improve his standing, in terms of knowledge, in that field, and the education had that effect.

The education which the petitioner obtained in 1958 was undertaken primarily for the purpose of maintaining or improving his skill, as an industrial psychologist, required by him in his employment.

New York University is located in downtown New York, and the classes attended by the petitioner were held at 6 or 8 p.m. In 1958 he paid tuition to the university in the amount of $270 and expended $80 for textbooks and supplies. He attended 42 class meetings, which required 42 round trips of approximately 50 miles between Newark and New York University. He used his automobile, a 1953 Mercury, in making these trips and incurred costs for car operation, tolls, and parking in the respective amounts of $189, $58.80, and $73.50. On the nights that he attended school he ate his dinners at restaurants instead of at his home. The total cost of meals was $147.

In his return for the year 1958, the petitioner claimed as deductions all the above amounts (for tolls he claimed an amount of $67.20 instead of $58.80 which we have found above was expended for that purpose). The respondent in determining the deficiency disallowed as a deduction the total amount claimed.

OPINION.

The question presented is whether the cost of tuition and other expenditures made by the petitioner in the year 1958 in taking courses at New York University are deductible under section 162 of the Internal Revenue Code of 1954,[2] as ordinary and necessary expenses paid or incurred in carrying on the petitioner's trade or business, or whether they are personal expenses which are nondeductible under section 262 of the Code.[3] Pertinent provisions of section 1.162–5 of the Income Tax Regulations promulgated pursuant to section 162 of the Code are set forth in the margin.[4]

The provisions of section 1.162–5 of the regulations represent a more

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

[3] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[4] Sec. 1.162–5 of the Income Tax Regulations provides in part:

SEC. 1.162–5 Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for

liberal attitude by the Internal Revenue Service and the Treasury Department with respect to the deductibility of expenditures for education. The principal effect of the new regulations was to remove the distinction previously made between self-employed persons and persons employed by others.[5] Previously, the Internal Revenue Service had generally held that educational expenses of employed persons were nondeductible unless required by the employer as a condition to the employee's retention of his position. Section 1.162–5(a)(2) of the new regulations provides that the cost of education voluntarily undertaken primarily for the purpose of maintaining or improving skills required by a taxpayer in his employment may be deducted. In so providing, the regulations in effect recognize the principle that the term "necessary" as used in section 162 is broad enough to cover expenditures voluntarily made which are "appropriate and helpful."[6]

---

other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * *

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or speciality therein, the expense of such education is personal in nature and therefore is not deductible.

[5] Congress enacted section 96 of the Technical Amendments Act of 1958 to extend the time for filing claims for refund upon the new regulations. In S. Rept. No. 1983, 85th Cong., 2d Sess., p. 110, 1958–3 C.B. 922, 1031, it is stated with respect to the new regulations:

The Internal Revenue Service long held that relatively few educational expenses were deductible as business expenses, or as expenses incurred in the production of income. Generally, the Service had held that for such expenses to be deductible they must be required as a condition to the retention, by the taxpayer, of his present employment. On April 4, 1958, however, the Treasury Department in a news release announced that it was issuing final regulations which were more liberal than the regulations previously in force, in that the expenses incurred by a teacher for education could be deducted even though they were incurred voluntarily and even though the courses taken carried academic credit or resulted in an increase in salary or in a promotion. The news release also indicated that this change was made in order to remove the distinction previously drawn between self-employed persons and employees, such as teachers. The final regulations issued on April 5, 1958, provided that expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken to maintain or improve skills required by the taxpayer in his employment or in his trade or business.

    *       *       *       *       *       *       *

Your committee is pleased with the more liberal interpretation by the Internal Revenue Service of what constitutes deductible educational expenses. * * *

And in Rev. Rul. 60–97, 1960–1 C.B. 69, the respondent stated:

The regulations also removed the uncertainties as to the deductibility of educational expenses by employees as distinguished from self-employed persons. They make it clear that both employees and self-employed individuals can deduct educational expenses which qualify as ordinary and necessary business expenses.

[6] In this respect Rev. Rul. 60–97, supra, states that:

The skills "required" by the taxpayer in his employment or other trade or business are those which are appropriate, helpful, or needed.

See *Welch* v. *Helvering*, 290 U.S. 111. The regulations also recognize that education is both "ordinary and necessary" within the meaning of the statute if it is customary for other established members of the taxpayer's trade or business to undertake such education. The regulations do provide that cost of education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer does not constitute deductible ordinary and necessary business expense. They also provide that the cost of education required to meet the minimum requirements for qualifying or establishment of the taxpayer in his intended trade or business or specialty therein is not deductible, thus recognizing that to such extent education is in the nature of a capital asset and that the cost thereof is personal and not deductible. See *Welch* v. *Helvering*, *supra*.

The petitioner received an M.A. degree in industrial psychology in 1951 and has since been employed as an industrial psychologist by several employers. During the year 1958 he was in the employ of the Prudential Insurance Company as an assistant research analyst in the field of industrial psychology. The education in question consisted of courses taken in 1958 by the petitioner at New York University. The petitioner had matriculated at New York University in 1956 and became a candidate for a Ph.D. degree in industrial psychology, and the courses which he took in 1958 were in pursuance thereof. At the time of the hearing the petitioner had not yet received his degree but expected to receive it in the near future.

It is clear that the education taken by the petitioner was not in order to meet the minimum requirements for qualification or establishment in his intended trade or business, since he had qualified as an industrial psychologist upon obtaining his M.A. degree in 1951 and had thereafter been employed as such by the insurance company and others.

The skill required by the petitioner in his employment by the insurance company was that of an industrial psychologist, and the question is whether the education was undertaken primarily for the purpose of maintaining or improving such skill. The respondent contends that it was not; that the primary purpose of the petitioner was to seek advancement in his employment, increase his prestige and reputation in his chosen field, and to satisfy his educational aspirations. The question is essentially one of fact to be determined upon the basis of all the evidence of record.

The courses taken were in the general field of industrial psychology. The petitioner testified that in his field of industrial psychology, which is a research field, it is necessary to keep abreast of current

knowledge, literature, and thinking in the field, and that his purpose in taking such courses was to accomplish that result and to maintain and improve his standing, in terms of knowledge, as an industrial psychologist; and that as a result of his experience and attending courses he became a much better industrial psychologist.[7]

The petitioner in his testimony conceded that a Ph. D. degree in his field represents a higher level of achievement, resulting in some gain in status or recognition, and that it would increase his chances of promotion by the insurance company. However, he testified that such a promotion did not depend upon this education, but depended upon his ability, and that there was no assurance that he would get a promotion from the insurance company as a result thereof. He also stated that over the long term (although not necessarily immediately) he expected some remuneration, either in the form of salary or promotion, as a result of his education.

Considering the record as a whole, and the petitioner's testimony in its entirety, we have concluded and have found as a fact that the education in question was undertaken by the petitioner primarily for the purpose of improving his skill as an industrial psychologist, which was the skill required in his employment. In addition to the testimony of the petitioner in this respect, the evidence shows that of the 40 persons employed by the insurance company in the field of psychological research, all either had doctoral degrees or were studying for a graduate degree. This, we think, indicates that it was customary for other established members of the taxpayer's trade or business to undertake education of this type. As pointed out above, the regulations provide that under such circumstances the taxpayer will ordinarily be considered to have undertaken the education primarily for the purpose of maintaining or improving the skill required by him in his employment.

The petitioner's expectation that over the long term the education in question would result in some benefit to him, either in the form of salary or promotion, does not establish that his primary purpose was to obtain a new position or substantial advancement in position, within the meaning of the regulations. Any education taken to improve

---

[7] The petitioner testified as follows with respect to his purpose:

With regard to the purpose of my education and my current status of employment, I would like to say this, that at my place of employment now and my past places of employment, I have been considered a practicing industrial psychologist; that my education therefore is not to qualify me to become an industrial psychologist, which I believe the counsel for the Government implied.

The fact is that I am now bettering myself in my status as an industrial psychologist.

\*       \*       \*       \*       \*       \*       \*

Well, I would like to reaffirm the point only that the purpose of education in this case was to keep current in my field and maintain my status as an industrial psychologist, although it is true that there are secondary gains and certainly important gains personally, that this is not really an issue in this case, but the fact that I do maintain current status is the only issue that I think we should consider this on. \* \* \*

one's skill would reasonably result in the expectation of some future benefit in the form of a promotion or opportunity of other positions. Here the petitioner had no assurance that the education would result in a promotion, although it would enhance his chances thereof. We construe his testimony as meaning that he was not attempting to qualify for any specific position either with the insurance company or elsewhere. Cf. *Joseph T. Booth III*, 35 T.C. 1144.

The respondent on brief relies largely upon the petitioner's concession, upon cross-examination, that if, upon receiving a Ph. D. degree, he should not receive a promotion from the insurance company he probably would leave the employ of such company and seek other opportunities. However, he stated in this connection that, of course, he might decide to leave for the same reason at any time. This testimony also, we think, indicates no more than the general expectation of benefit which would result from any education undertaken to improve an existing skill. The fact that such education may result in obtaining a degree, a new job, or advancement does not preclude the deduction of the cost thereof where, as we have found is true here, the education was undertaken primarily for the purpose of maintaining or improving the skill required by the employee in his employment. This has been recognized by the respondent.[8]

The record also establishes to our satisfaction that the petitioner by taking these courses was not qualifying himself for the practice of any specialty within his field of industrial psychology. See *John S. Watson*, 31 T.C. 1014. In this respect the instant case differs from *Arnold Namrow*, 33 T.C. 419, affd. (C.A. 4) 288 F. 2d 648. We are also satisfied that the education was not undertaken primarily for any personal purpose of the petitioner such as the purpose of fulfilling his general educational aspirations.

In view of the foregoing, it is our conclusion that the amounts expended by the petitioner in 1958 for tuition and for textbooks and supplies and the cost of the petitioner's transportation necessary to obtain the education, including the cost of tolls and parking, constitute deductible business expenses under section 162(a). However, the amount spent for meals constitutes nondeductible personal expense and not expense incurred while "away from home" within the meaning of section 162(a)(2) of the Code and the regulations. See *Al J. Smith*, 33 T.C. 861, and cases cited therein.

*Decision will be entered under Rule 50.*

---

[8] In this connection Rev. Rul. 60-97, *supra*, states:

\* \* \* the fact that academic credit, a degree, a new job, or advancement may result does not preclude a deduction so long as the education is primarily undertaken for one of the two purposes specified in the regulations as causing the expenses to qualify for deduction.