James E. Lane and Patricia A. Lane v. Commissioner.
Lane v. Commissioner
Docket No. 86374.
United States Tax Court
T.C. Memo 1962-179; 1962 Tax Ct. Memo LEXIS 130; 21 T.C.M. (CCH) 989; T.C.M. (RIA) 62179; July 26, 1962
*130 Held, that certain expenses of education, which an Assistant Professor of Business at a state college incurred and paid in taking university courses related to the field in which he was teaching, are deductible under section 162(a) of the 1954 Code, as interpreted in sec. 1.162-5, Income Tax Regs.
Robert Richardson Milroy, Esq., for the petitioners. Robert E. Johnson, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined a deficiency in the income tax of the petitioners for the calendar year 1958, in the amount of $154.19. The sole issue for decision is whether certain expenses for education in the amount of $770.92, which an Assistant Professor *131 of Business at a state college incurred and paid in taking university courses related to the field in which he was then teaching, are deductible under section 162(a) of the 1954 Code. Findings of Fact Most of the facts have been stipulated. The stipulation of facts, including all exhibits identified therein, is incorporated herein by reference. Petitioners James E. and Patricia A. Lane are husband and wife, residing in Bloomington, Indiana. They filed a joint income tax return for the calendar year 1958, with the district director of internal revenue at Indianapolis. The wife is a party herein solely by reason of her having joined in filing said joint return. The husband James (hereinafter called the "petitioner") was throughout the taxable year involved, an Assistant Professor of Business at Indiana State Teachers College. He became a member of the faculty of that college in September 1957, when he was appointed to said position on a probationary basis, at a salary of $5,200 for the first academic year. This probationary appointment was thereafter renewed for the following academic year; and then in March 1959, which was subsequent to the taxable year here involved, he was *132 accorded permanent tenure. Up to the time of the trial herein, he had not been appointed by the college to any position of higher academic rank. The circumstances which led up to and resulted in petitioner becoming a member of the faculty of said college, are these. Prior to 1951 petitioner had been a student at said college, where his major academic interests had centered in the fields of accounting and education. In 1951 he graduated from that college with a degree of Bachelor of Science; and he was granted a license by the State of Indiana to teach business courses. Thereafter he worked for several years as an employee of accounting firms in Terre Haute; and while so employed, he qualified for and was licensed by the State of Indiana as a Certified Public Accountant. Then in June 1956, he entered into the field of education, by accepting a position as an instructor of accounting and business law at General Motors Institute in Flint, Michigan, where he taught classes both in the day school and in the evening school. In May 1957, while petitioner was so teaching at the General Motors Institute, he received a letter from the Chairman of the Department of Business of Indiana State *133 Teachers College, which was to the effect: That said college had an opening in its Department of Business, for which it was particularly anxious to secure a man with a C.P.A. certificate; that the responsibilities of such position would be largely those of teaching courses in advanced accounting, with occasional classes in elementary principles; and that the college hoped petitioner might be interested in making application for such position. The letter further indicated that arrangements probably could be made for the college to pay him a salary of about $6,500, which would approximate the salary he was then receiving. This led to negotiations and extended correspondence between said department chairman and the petitioner, during which it became evident not only that petitioner would like to obtain the position, but also that said chairman considered him to be fully qualified for the proposed position, and wanted him to become a member of the faculty of the college's business department. A problem then arose, which for a time appeared to be insurmountable. It was this. The department chairman felt that by reason of petitioner's C.P.A. certificate and teaching experience, it would *134 be unjust for him to encourage petitioner to accept a position at a salary of less than about $6,500 which he had previously suggested; but he learned that the college administration was unwilling to employ petitioner at more than the lower salary provided for instructors, because petitioner did not have a Master's degree, and the authorities were not amenable to according the recognition to petitioner's C.P.A. certificate which the chairman thought would be appropriate. Under the college's announced schedule, the next higher academic rating of Assistant Professor carried the requirement that those appointed to such position "must have completed at least one full academic year of graduate work above and beyond the Master's degree." Shortly thereafter, however, petitioner received a letter from the Dean of Instruction of the college, in which petitioner was offered an appointment as Assistant Professor of Business, at a salary of $5,200. This letter stated in part, as follows: President Holmstedt and I have given careful consideration to your background of education and experience. In making this offer, we have credited the C.P.A. as the equivalent of a master's degree in training *135 credit. We have also given credit for four years of accounting experience and one year of teaching experience, the maximum credit given any person coming to the College as an assistant professor. * * * Petitioner accepted this new offer; and he was then appointed Assistant Professor of Business, in accordance with the abovementioned revised arrangement. The college, in so appointing him, made no intimation that petitioner's existing qualifications were not fully adequate for the position given him, or that it either expected or required petitioner to secure any additional education or any additional academic degree, as a condition to his obtaining or holding said position. During the above-mentioned negotiations with the department chairman, petitioner suggested that he might wish to enroll in some university courses in the field of business; because it had been his intention and desire for some time to improve his knowledge in those areas of business which are closely related to accounting, such as management and finance, in order that he might better demonstrate to his accounting students the functions of accounting, as a tool of and an aid to business management. The department *136 chairman encouraged petitioner in this regard; discussed the type of courses that would be helpful in carrying out such plan; and also indicated that, if petitioner wished to pursue such studies, the college would so arrange his teaching schedule as to make this possible. Beginning in September 1957, which was the time when petitioner began his new assignment of teaching in the Department of Business at the college, he did enroll in certain courses at the University of Indiana; and he continued to pursue such courses during the taxable year here involved. All these courses, which were in such fields as management, marketing and transportation, were closely related to the field in which petitioner was teaching classes at the college. Also these courses were at the academic level of petitioner's present position; for they led toward a Master's degree, which was the degree that (except for the above-mentioned exception made in petitioner's case) the college normally required of any person whom it employed at the rank of Assistant Professor. During the taxable year 1958, petitioner incurred expenses in carrying on said university courses, in the amount of $770.92; and on his income *137 tax return for said year, he claimed a deduction for the same, as educational expenses. The respondent, however, in his notice of deficiency herein, denied such deduction with the following explanation: * * * Under Regulations 1.162-5(b) the expense does not qualify as deductible since the education was required in order to meet the minimum requirements for qualification or establishment in your intended trade or business or specialty. Opinion After reviewing the pertinent authorities and considering and weighing all the evidence, we think the respondent's disallowance of said deduction was erroneous, for the following reasons: 1. Section 162 of the 1954 Code allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." And section 1.162-5 of the Income Tax Regulations, which was promulgated with respect to said statute, sets forth in considerable detail, how the provision of said statute should be applied with regard to "Expenses for education." It was under this section of the regulations, that the respondent denied petitioner's claimed deduction for the education *138 expense here involved; and also, it is this section of the regulations upon which each of the parties to the present case have relied to find support for their respective positions. Moreover, this Court has heretofore given its approval to this regulation; and it has stated that the same reflects "a more liberal attitude by the Internal Revenue Service and the Treasury Department with respect to the deductibility of expenditures for education." Cosimo A. Carlucci, 37 T.C. 695. Likewise the Congress, in its consideration of the Technical Amendments Act, 1958, gave recognition to this "more liberal" position of the Treasury Department. See S. Rept. No. 1983, 85th Cong., 2d Sess., p. 110, 1958-3 C.B. 922, 1031. Said regulation sets forth certain general rules or tests for the deductibility of expenses for education - all of which are dependent on a determination of the primary purpose for which the education was undertaken by the taxpayer. These rules or tests are in substance as follows: (A) A taxpayer can deduct expenses for education undertaken primarily for the purpose of (1) Maintaining or improving skills required in his employment or other trade *139 or business, or (2) Meeting the express requirements of his employer, or the requirement of applicable law or regulations imposed as a condition to the retention by the taxpayer of his salary, status or employment. (B) A taxpayer cannot, however, deduct expenses for education undertaken primarily for the purpose of (3) Obtaining a new position, or (4) Obtaining substantial advancement in position, or (5) Fulfilling the general educational aspirations or other personal purposes of the taxpayer. More recently, the Internal Revenue Service issued a ruling relevant to its position as to the applicability of said regulation (Rev. Rul. 60-97, 1960-1 C.B. 69), in which it is stated: [The] fact that academic credit, a degree, a new job, or advancement may result does not preclude a deduction so long as the education is primarily undertaken for one of the two purposes specified in the regulations [being those purposes which are above stated under (A)(1) and (A)(2)] as causing the expenses to qualify for deduction. To the same effect, see also Technical Information Release No. 76 of the Internal Revenue Service, dated April 11, 1958 (published in 58-6 C.C. *140 H. Federal Tax Reporter, [*] 6445). 2. In view of the foregoing, it is necessary for us to here determine: What was the primary purpose for which the present petitioner undertook the education in connection with which he incurred the expense of $770.92 here involved? This is essentially a question of fact, to be resolved from our consideration and weighing of all the evidence. And, since the answer is dependent on the facts of the particular case at hand, decisions made in other cases wherein the facts were different are, though enlightening, not here controlling. After having heard the present petitioner testify and having considered and weighed all the evidence, it is our opinion, and we here hold, that the primary purpose for which the petitioner undertook the education that caused him to incur the expense here involved, was that of "maintaining or improving skills required" in his employment as an Assistant Professor of Business at the Teachers College. In arriving at this conclusion, we have given particular consideration to the following facts established by the evidence. The university courses which he pursued were, as we have hereinbefore found as a fact, closely related *141 to the field in which petitioner was then teaching classes at the college; and they were undertaken by him in order that he might better demonstrate to his students the functions of accounting, as a tool of and an aid to business management. His enrollment in such courses was encouraged (though not required) by the chairman of the college's Department of Business in which he was employed. And the academic level of such courses was that which led to a Master's degree, which was the degree that the college normally would have required of any person whom it employed at the rank of Assistant Professor. Petitioner was not required by the college administration to pursue these university courses or to obtain a Master's degree, as a condition to either obtaining or retaining his position. The administrative officers made it clear in employing petitioner, not only that his existing qualifications were fully adequate, but also that the college had credited his C.P.A. certificate "as the equivalent of a master's degree in training credit," and in addition, had accorded to his accounting experience and teaching experience "the maximum credit given any person coming to the College as an assistant *142 professor." It probably is true - or at least it is reasonable to assume - that petitioner may have hoped and expected that, by pursuing said courses and so applying them as to increase the quality of his teaching work, his efforts might eventually be given favorable recognition through advancements in salary or academic rank. But we regard such hopes and expectations to be normal factors, which were both indefinite and incidental; and there is no evidence that the attainment of such recognition was the primary purpose of the education. As we have hereinbefore noted, the Internal Revenue Service has ruled that such incidental factors do not preclude a deduction for expenses of education, so long as the education is primarily undertaken (as it was here) for the purpose of maintaining and improving skills required by the taxpayer's existing employment. The parties have stipulated that if the petitioner is entitled to the deduction here in controversy, the amount of the deduction claimed on his return is correct. We decide the issue in favor of the petitioners. Decision will be entered for the petitioners.