John C. Martin, Jr., and Peri S. Martin v. Commissioner.
Martin v. Commissioner
Docket No. 4716-63.
United States Tax Court
T.C. Memo 1965-188; 1965 Tax Ct. Memo LEXIS 143; 24 T.C.M. (CCH) 982; T.C.M. (RIA) 65188; July 9, 1965
*143 Held, that amounts expended by the petitioner, a patent examiner employed by the United States Patent Office, for tuition, books and supplies in connection with attendance at law school classes are not, in the circumstances, deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954. John C. Martin, Jr., pro se, 2859 S. Abingdon St., Arlington, Va. Charles F. T. Carroll, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined *144 a deficiency in income tax for the taxable year 1962 in the amount of $133.73. The issue presented is whether amounts expended by petitioner John C. Martin, Jr., a patent examiner employed by the United States Patent Office, for tuition, books, and supplies in attending night law school classes are deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioners are husband and wife residing in Arlington, Virginia. They filed a joint Federal income tax return for the taxable year 1962 with the district director of internal revenue, Richmond, Virginia. John C. Martin, Jr., will hereinafter be referred to as the petitioner. The petitioner served in the United States Army from July 1954 to June 1957, at which time he returned to the University of Delaware and continued his courses which led to his receiving, in June 1960, a bachelor's degree in chemistry. Sometime during his last year of attendance at the University of Delaware the petitioner considered various careers within the field *145 of chemistry. He was not interested in laboratory work on a full time basis. A document issued by the American Chemical Society described various occupations, one of which was that of patent examiner. At that time the petitioner developed an interest in the position of patent examiner. At the placement office of the university he saw a pamphlet issued by the Civil Service Commission announcing an examination for patent examiner. He also saw a pamphlet issued by the Patent Office entitled "A Career for Engineers and Scientists," in which it was stated that new patent examiners might enroll in the evening law school of one of the four major universities in the Washington, D.C. area. The idea of combining the knowledge of organic chemistry and law appealed to the petitioner. He was not financially able to go to law school full time, and a career as a patent examiner, which would permit him to pursue his legal studies at night, interested him. Accordingly, sometime during the winter of 1959-1960, he took the Law School Admissions Test and about the same time inquired of George Washington University Law School (located in Washington, D.C.) concerning application for admission. This was *146 done before he made any application to the Patent Office, since he was not interested in taking a position as a patent examiner unless he could be admitted to law school. From examining the pamphlet issued by the Patent Office, he was aware that at that time, [1] in general, a law degree or membership in the bar of a state was required for promotion to the top supervisory and technical positions in the Patent Office, and he did not want to take a position in that office unless he had the opportunity to obtain the qualifications necessary for such higher positions. In the spring of 1960 petitioner applied for a job as a patent examiner with the United States Patent Office. Sometime during the summer of 1960, he moved to the Washington, D.C., area and was employed by a bank. In September 1960, he enrolled in the George Washington University Law School as a degree *147 candidate, taking night courses. In October 1960, he went to work for a patent law firm as a patent searcher. In March 1961, he received from the Patent Office an offer of employment as a patent examiner, but he did not accept it. He received another such offer from the Patent Office in December 1961, which he accepted. He began his employment there as a patent examiner in February 1962, and was so employed at the time of the trial of this case. At that time, he had completed 38 of the 80 credit hours of courses required for a bachelor of laws degree. He continued his course of night study at the law school and received the degree of LL.B. in June 1964. In July 1964, he took the District of Columbia Bar examination but was unsuccessful. The courses which the petitioner took at George Washington University Law School during the year 1962 were: Federal Income Tax
3 credit hours
Trusts & Estates
3 credit hours
Evidence
4 credit hours
Copyright Law
2 credit hours
Equity
2 credit hours
Constitutional Law
4 credit hours
When first employed in 1962 as a patent examiner the petitioner was placed in grade GS-7, having met the minimum educational and experience *148 requirements prescribed for a patent examiner in that grade. [2] Later in that year he was promoted to grade GS-9. He served in Division 60 of the Patent Office which dealt with polymer chemistry (resins) and photographic chemistry. He primarily handled patent applications in the fields of ion exchange resins, polycarbonate resins, and phenolic resins. *149 In general the duties of a patent examiner are to examine patent applications to determine whether a patent should be granted. [3] This involves an analysis of the claim in the application to see whether it meets formal requirements, a search of all prior art relating to the particular claimed invention, formulating decisions as to whether the claimed subject matter is patentable, and writing an "action" in the case. If no equivalent invention in the prior art is found the examiner recommends that a patent be allowed. He conducts interviews with applicants, patent attorneys and patent agents [4] with a view to overcoming objections and rejections. However, a patent examiner below those in grade GS-12 is not authorized to reach final conclusions with respect to issues, although he may participate in the negotiations. When an interference arises (that is, when two applicants are claiming the same invention) the patent examiner makes a search for precedents and assists a primary examiner (one who is employed in grade GS-14 or GS-15), who resolves the issue. If a patent application is rejected the applicant may appeal to the Board of Appeals, an administrative body within the Patent Office. *150 Patent examiners do not appear before such board, but there is filed with the board by a primary examiner a brief which is usually written by the examiner who examined the patent application. In the event of an adverse decision by the board, the applicant may appeal to the Court of Customs and Patent Appeals or to the United States District Court for the District of Columbia. In such a proceeding the Patent Office is represented by attorneys who are employed in the Solicitor's Branch of the Patent Office. Patent examiners are not required to prepare any documents or pleadings for the presentation of a case to any court. Patent examiners in the lower grades do not deal with any field of law other than patent law. All patent examiners are required upon commencement of their duties in the Patent Office to take a 2-week training course with respect to their duties. *151 During 1962 the Patent Office also conducted an advanced lecture program (2 hours each week for about 40 weeks) which included discussions of various aspects of the law with respect to patents. In December 1962 the Patent Office established the Patent Office Academy to provide patent examiners with a more comprehensive training in the field of patents, and particular stress was placed upon Title 35, United States Code, pertaining to patents. The program provided was for 20 hours each week for about 6 months. The petitioner attended the Patent Office Academy which commenced in 1962. The Patent Office did not require a patent examiner to have any previous law school education, nor was he required by the Patent Office to pursue a course of legal study in order to maintain his position. While in 1962 a law degree was not required as a prerequisite to obtaining or holding the position of patent examiner, attendance at law school was encouraged by the Patent Office. If two employees of equal ability were under consideration for promotion to a particular position and one had a law degree and the other did not, the former would be selected because of his potential for higher positions. *152 In petitioner's group there were 4 primary examiners or supervisors and each of them had a law degree. The Patent Office employed approximately 1,100 patent examiners. Most of the new patent examiners attended law school. Approximately 75% of such new patent examiners who attend law school leave the Patent Office while they are attending law school or within a year or two after graduation. About 80% of the 40 to 45 organic chemistry examiners in petitioner's group have attended law school. During 1962 the petitioner expended a total of $752.50 in connection with his attendance at law school as described above. This amount consisted of $578 paid for tuition and fees, and $174.50 for books and supplies. In his return for 1962, the petitioner claimed as a deduction the above amount of $752.50 as "Education." The respondent disallowed this deduction, stating in the notice of deficiency that the claimed expenses are not allowable as a deduction under section 162 of the Internal Revenue Code of 1954. The law courses which the petitioner took in 1962 were not undertaken primarily for the purpose of maintaining or improving skills required by the petitioner *153 in his employment. Opinion Section 162(a) of the Internal Revenue Code of 1954 allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 262 of the Code provides that, with certain exceptions not here pertinent, no deduction shall be allowed for personal, living, or family expenses. Section 1.162-5 of the Income Tax Regulations[5] provides that expenditures made by a taxpayer for his education are deductible if they are for education undertaken primarily for the purpose of maintaining or improving skills required in his employment or other trade or business or meeting the express requirements of his employer as a condition to the retention of his salary, status, or employment. Such regulations further provide that expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. *154 The petitioner does not contend that the education which he took was required as a condition to the retention of his salary, status or employment, but does contend that within the intendment of the regulations it was undertaken primarily for the purpose of maintaining or improving skills required in his employment as a patent examiner and that, therefore, the cost thereof is deductible. In this connection the petitioner contends that the position of patent examiner is quasi-judicial and that the education in question was helpful in improving skills required in his employment. The respondent, on the other hand, contends that the law school courses taken by the petitioner were not sufficiently related to his employment to make the cost an ordinary and necessary business expense, and that the petitioner did not take the course for the primary purpose of maintaining or improving skills needed in his employment. It is his position that the petitioner's legal education qualified him for a new trade or business for which he was not previously qualified, and that his purpose in taking this education was to fulfill his pre-existing educational aspirations or to obtain substantial promotions *155 within the Patent Office, or to obtain employment outside the Patent Office. We have heretofore pointed out in Cosimo A. Carlucci, 37 T.C. 695, that the fact that the education taken may result in obtaining a degree, a new position, or advancement does not preclude the deduction of the cost thereof, if the education was undertaken primarily for the purpose of maintaining or improving the skills required by the employee in his then employment. The question of a taxpayer's primary purpose in undertaking the education is essentially one of fact which must be decided upon the basis of all the facts and circumstances in a particular case. The petitioner first conceived the idea of attending law school while he was finishing his course leading to a bachelor's degree in chemistry. He was not financially able to attend law school full time, and employment as a patent examiner appealed to him since it would permit him to pursue his legal studies at night. He took the test for admission to law school and made inquiries concerning application for admission to George Washington University Law School prior to making any application to the Patent Office. He entered law school in *156 September 1960, at which time he was working in a bank. At the time he entered law school he had no assurance that he would obtain a position as a patent examiner with the Patent Office. It was not until March 1961, that he was offered such a position. He refused the offer at that time, and it was not until February 1962, that he was employed by the Patent Office as a patent examiner. In the light of these facts and the petitioner's testimony, [6] we think it reasonable to conclude that petitioner's primary purpose in entering law school was to qualify himself as a lawyer regardless of whether he might ever become employed by the Patent Office as a patent examiner. When petitioner began his employment as a patent examiner he had 38 of the required 80 credit hours for a degree in law. We are unable to conclude from the evidence that his purpose in continuing his legal courses after he became a patent examiner was any different from his original purpose when he entered law school. Examiners in the two grades which the petitioner occupied in 1962 did not deal with general law, but only with patent law and, as set forth in the Findings of Fact, the Patent Office furnished education in that *157 field. If the petitioner's continuation of his law school courses in 1962 was for purposes connected with his employment as a patent examiner we think that the evidence, including the petitioner's testimony, would require the conclusion that petitioner's primary purpose was to qualify himself as a primary examiner or supervisor in grades GS-14 and GS-15. While the Patent Office, by 1962, had officially eliminated the requirement of a law degree for such higher positions, the evidence establishes that, as a practical matter, such a degree was generally necessary to attain them. *158 The petitioner relies upon that portion of the regulations which states that if it is customary for other established members of the taxpayer's trade or business to undertake the education in question, the taxpayer will ordinarily be considered to have undertaken the education for the purpose of maintaining or improving skills required in the employment. He points out that about 80% of the group of which he was a part in the Patent Office had attended law school. However, the evidence also shows that approximately 75% of the new patent examiners who attend law school leave the Patent Office while they are attending law school or within a year or two after completion of their law courses. Under the circumstances, we do not think that the fact that 80% of the petitioner's group attended law school is indicative that the petitioner's primary purpose in taking this education was to maintain or improve skills required by him in his employment. We have carefully examined the various cases cited by the petitioner, but do not consider any of them decisive here. The cases involve varying factual situations and, as stated, each case must be decided upon its particular facts and circumstances. *159 Upon a full consideration of the record, we have concluded and found as a fact that the education in question was not undertaken primarily for the purpose of maintaining or improving skills required by the petitioner in his employment. We hold, therefore, that the expenditures in question do not constitute ordinary and necessary business expenses within the meaning of section 162(a) of the Code, and the respondent's determination is approved. Decision will be entered for the respondent. Footnotes
1. In 1961 the Patent Office eliminated the requirement, theretofore existing, that to be eligible for promotion to the position of primary examiner or supervisor (Grades GS-14 and GS-15), a patent examiner must have a law degree. However, other positions, such as interference examiner, continued to require a law degree.↩
2. The basic educational requirement for a grade GS-5 patent examiner (as disclosed by a United States Civil Service Commission pamphlet, revised October 1961) was a bachelor's degree in a field of engineering or physical science, or certain specified equivalents in college work or experience. To qualify for patent examiner, grades GS-7 through GS-15, an applicant was required to meet the basic requirement for GS-5 and in addition have had "professional experience in the field of patent law which included the examination, or preparation and prosecution of of U.S.Patent applications" of one year for grade GS-7, two years for grade GS-9, and three years for grades GS-11 through GS-15. It was provided that for one year of the required professional experience in patent law there might be substituted, among other things, the successful completion of a full course of study in a recognized school of law leading to a bachelor's or higher degree; membership in the bar of any state, territory, or the District of Columbia; or one year of successful regular employment as a patent searcher for a registered patent attorney or agent. Such pamphiet showed the following salary scale for the various Civil Service grades: ↩
Basic En-
Maximum
Grade of
trance
Periodic
Basic
Position
Salary
Increase
Salary
GS-5
$ 5,335
GS-7
6,345
GS-9
$ 6,435 $165
7,425
GS-11
7,560
260
8,860
GS-12
8,955
260
10,255
GS-13
10,635
260
11,935
GS-14
12,210
260
13,510
GS-15
13,730
325
15,030
3. A patent examiner's duties do not include the registration of copyrights. That function is performed by the Library of Congress. ↩
4. A patent agent is a non-lawyer who has passed the Patent Office examination and is therefore eligible to practice before the Patent Office. About 90% of the practitioners are lawyers.↩
5. Sec. 1.162-5 of the Income Tax Regulations provides in part: SEC. 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.↩
6. The petitioner's testimony was in part as follows: Q. Why did you choose to attend law school? A. * * * I graduated from the University of Delaware in 1960, and the year prior to graduating I was, of course, contemplating various careers within the field of chemistry. And I wasn't particularly interested in laboratory work as a full-time basis. And during an orientation program we were distributed a copy of the document from the American Chemical Society that gave various occupations within chemistry, and one of these was the patent field, and particularly that of patent examiner. And at that time I developed an interest as to patent examiner. Also I went to the placement office at the University of Delaware, and there I saw what is now Exhibit 3-C and 4-D. And Exhibit 3-C is entitled "A Career for Engineers and Scientists." On page 6 of this exhibit it states that: "New examiners may enroll in evening law school at one of the four major universities in the Washington area, and evening courses leading to the L.L.B. in four or more years were designed to meet the need of a large number of examiners enrolled in such courses." Now, I thought this was somewhat interesting that a person could combine the knowledge of organic chemistry and of law and that a person could pursue his legal study in the evening. At that time I didn't have a sufficient amount of money to go to law school full time during the day without working or to go to medical school. And this career as a patent examiner here where I could pursue my legal studies at night definitely interested me. Also at the placement office I saw Exhibit 4-D, which is the job of the patent examiner, and it also in many paragraphs here states the duties of the patent examiner are to formulate decisions in all legal, scientific and technical questions. So it definitely appeared to me that the Patent Office encouraged people to go to law school because of - well, the information that was available at the placement office. So thereafter I took the law school admission test for George Washington University. Now, I took this law school admission test before I applied to the Patent Office, because it seemed to me if I did not get admitted to law school that I would not want to become a patent examiner. Exhibit 3-C, "A Career for Engineers and Scientists in the Patent Office," states under promotional opportunities - I don't have the exact page - Well, on page 6 it states that in general a law degree or membership in a State bar are required for promotion to the top supervisory or technical positions in the Patent Office. Now, I certainly wouldn't want to enter a profession where it would be impossible for me and I'd be barred ab initio from rising from through the ranks. * * *
So, to summarize the question, which was why did I choose to attend law school, I say the principal purpose was to better qualify myself for a career in patent examining.↩