Alan Aaronson v. Commissioner.
Aaronson v. Commissioner
Docket Nos. 3284-68, 1626-69.
United States Tax Court
T.C. Memo 1970-178; 1970 Tax Ct. Memo LEXIS 182; 29 T.C.M. (CCH) 786; T.C.M. (RIA) 70178; June 25, 1970, Filed Alan Aaronson, pro se, 111 Bruce Ave., Yonkers, N. Y. Larry Kars, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioner's Federal income taxes for the years 1965 and 1966, in the amount of $296.50 (docket No. 3284-68), and $215.50 (docket No. 1626-69), respectively. Concessions having been made, the only issue remaining for decision is whether petitioner's expenditures for flying lessons are deductible as a business-related education expense under section 162(a) of the Internal Revenue Code of 1954, [1] and section 1.162-5, Income Tax Regs.
*183 Findings of Fact Petitioner herein is Alan Aaronson (hereinafter sometimes referred to as Alan). At the times the petitions in these consolidated cases were filed, Alan resided in Yonkers, New York. He filed his 1965 and 1966 income tax returns with the district director of internal revenue, Manhattan District, New York. In 1965 and 1966, Alan was employed as a full-time staff photographer for the New York Daily News (hereinafter sometimes referred to as News), working at night. He also did free-lance news photography on his own time and often sold his pictures to the News and to other publications. When the News further distributed one of petitioner's pictures to a non A.P. or U.P.I. publication petitioner received half of the gross amount which was paid. During the years in issue, Alan took flying lessons at a cost of $1,103 in 1965, and $860 in 1966. In February 1969, he obtained his private license to fly and as of late September 1969, lacked approximately 20 hours of having the requisite flight time to qualify for a commercial license. Alan learned to fly solely in order to be able to get to the locale of a news event quickly, and also to be able to take aerial photographs *184 of various news events, such as fires, ships sinking at sea, or train disasters, which would otherwise be unobtainable or at least not very graphic. At the time he took the lessons, he did not do so as a hobby; or to obtain a commercial license to transport others for compensation; or in order to qualify for any new employment, trade, or business. He, in fact, is afraid of flying but considers it desirable and necessary in connection with the freelance portion of his business. The News did not request Alan to take the flying lessons or reimburse him for them; nor was he to receive any increased salary once he could fly. During the years 787 in issue, News maintained three planes and pilots for assignment among its photographers (including Alan) for aerial photographs. These planes were substantially larger and more complicated than the type utilized by petitioner, and his lessons did not qualify him to fly them. The photographers who take the pictures from these planes do not interchange jobs with the pilots and their unions consider the positions as separate trades. Petitioner became qualified for a singleengine plane which could be utilized by the pilot, flying alone, for *185 taking aerial photographs. He deducted the cost of the lessons as a business (education) expense. Respondent determined that the expenses were nondeductible. Opinion Petitioner took flying lessons in order to be able to take aerial photographs of newsworthy events while flying alone. He contends that the expense of the lessons is deductible as an education expense pursuant to section 162(a)[2] and the regulations thereunder. Section 1.162-5, Income Tax Regs., governing the deductibility of a taxpayer's educational expenses for the years in issue, was promulgated by T.D. 6291, 1958-1 C.B. 63, filed April 3, 1958. In 1967 this section was revised by T.D. 6918, 1967-1 C.B. 36, filed May 1, 1967. The new revised regulations are effective for taxable years beginning on or after January 1, 1968, but for prior years taxpayers may rely on either the 1958 or the 1967 regulations. Rev. Rul. 68-191, 1968-1 C.B. 67; Ronald F. Weiszmann, 52 T.C. 1106, 1108 (1969); *186 James A. Carroll, 51 T.C. 213, 219 (1968), affd. 418 F. 2d 91 (C.A. 7, 1969). Respondent relies on the 1967 regulations for a denial of this deduction. Since we find that petitioner meets the requirements of the 1958 regulations, we need not and do not consider the applicability of the 1967 regulations. The 1958 regulations provide, in pertinent part, as follows: Sec. 1.162-5. Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken *187 primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. It is clear to us that petitioner has not met the requirements of section 1.162-5(a) (2), Income Tax Regs. (1958), and we do not understand that petitioner contends otherwise. The News did not request that Alan learn to fly or impose this skill as a condition to his continued employment as a News photographer. Moreover, the record shows that the positions of News photographer and News pilot were not interchangeable and, furthermore, petitioner was not learning to fly the type of plane owned by the News. The record also shows that Alan did not take the lessons in order to qualify for a new trade or business (of being a commercial pilot), which purpose, under section 1.162-5(b), Income Tax Regs. (1958), would preclude a deduction of this expense. Also, as we have found, Alan did not undertake flying as a hobby or for personal reasons. The deductibility of the expense, therefore, turns on the applicability of section 1.162-5(a)(1), Income Tax Regs. (1958). The term "required" *188 in that section is apparently intended to be a synonym for the section 162(a) term "necessary," which has been interpreted to mean appropriate or helpful in a taxpayer's business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). As is stated in Rev. Rul. 60-97, 1960-1 C.B. 69, 70, "[the] skills 'required' by the taxpayer in his employment or other trade or business are those 788 which are appropriate, helpful, or needed." Cf. also Cosimo A. Carlucci, 37 T.C. 695, 699 (1962). Undoubtedly the Knowledge of flying will be helpful to this petitioner, for with it he can, on his own time, take aerial photographs of various news events which he can sell free lance. To be sure, he could do the same if he hired a pilot, but we do not interpret the requirements of the regulation in such a way as to deny a deduction merely because there are other means to the same result. The lessons, in short, were appropriate to accomplishing petitioner's purposes of improving the range and quality of his free-lance pictures; and to get them early, and before their news value had been eroded by time. Respondent contends that there is no evidence that it *189 was customary for photographers to also train as pilots and hence no significant connection between his business and the expenditures has been shown. We disagree. [3] It seems to us that versatility in news photography is the touchstone of a good photographer. By being able to fly solo, Alan has increased the range of his picture-taking ability. When sudden news events occur Alan will be capable of taking free-lance pictures without first having to locate a pilot to aid him. The time gained may well make the difference between a valuable or a worthless picture, and many events which would be unobtainable or mundane if pictured from ground level become spectacular from the air. Petitioner's testimony gives enlightening examples such as fires, train derailments with cars anglepatterned over the landscape, and ships sinking at sea. *190 We must bear in mind that Alan's trade or business was not simply photography, but was the trade or business of news photography. The various elements discussed above have nothing to do with photography per se, but it is clear to us that these elements are an integral part of good news photography. To paraphrase the regulation, Alan's learning how to fly will improve the skills (timeliness, range, and graphic portrayal) required of (helpful to) him in his trade or business of free-lance news photography, and this appraisal of the factors required for good and successful news photography is objectively supported by the fact that News owned three airplanes and employed three pilots on a regular basis for use by its staff photographers. Accordingly, we hold that the requirements of section 1.162-5(a) (1), Income Tax Regs. (1958), have been satisfied and that petitioner may deduct the expense of these flying lessons. Decisions will be entered under Rule 50. 789 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩
3. Respondent made a similar contention regarding deduction of the expense of a course in psychiatric analysis on the part of a physician practicing internal medicine in the case of John S. Watson, 31 T.C. 1014. In disposing of this contention we said (p. 1016): Petitioner was the only witness. He did not attempt to prove that other internists customarily took courses in analysis and psychiatric techniques such as he pursued. As a matter of fact he was asked, but did not respond. if he could name any other internist who had taken such a course. However, we do not think it was absolutely necessary that the customariness be established by testimony. Of course had such evidence been introduced it would have strengthened petitioner's position. Lacking testimony on this point we think it sufficient to say that it is in the realm of common knowledge that many physicians ordinarily continue to enlarge their medical education after their fundamental training has been completed and they have embarked on their practice. The regulations apparently assume this, since the emphasis is placed upon the primary purpose of the education, i. e., was it undertaken primarily for the purpose of maintaining or improving skills required in trade or business, and not on whether or not such education was customarily undertaken by physicians. Of Course if the latter can be established the regulations provide that the taxpayer will ordinarily be considered to have made the educational expenditures with the required purpose. Petitioner should not be denied the claimed deductions on the narrow grounds urged by the Commissioner. The record clearly shows that petitioner undertook the course for educational purposes and that his aim was to maintain and improve his skill as an internist. The techniques with which he sought to become familiar were useful in his general field of practice. Though the course was specialized, petitioner was not pursuing it for the purpose of fitting himself to engage in the specialty. He continued to practice as an internist but with skills presumably sharpened by his additional training in analysis and psychiatric techniques.↩