DANIEL D. AND SUSAN M. GRANGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Granger v. Commissioner
Docket No. 11573-78.
United States Tax Court
T.C. Memo 1980-60; 1980 Tax Ct. Memo LEXIS 521; 39 T.C.M. (CCH) 1158; T.C.M. (RIA) 80060; March 5, 1980, Filed Daniel D. Granger, pro se. Karen Nicholson Sommers, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $445 in petitioners' Federal income tax for the year 1975. Petitioners have conceded the disallowance of a sales tax deduction. The only issue presented for decision is whether petitioner Daniel D. Granger, a night manager for Vons Gvrocery Company, is entitled to deduct as business expenses under section 162(a) of the Code [1] and section 1.162-5, Income Tax Regs., certain educational expenditures in attending the Food Marketing Management Program at the University of Southern California.
*522 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Daniel D. Granger (petitioner) was a legal resident of Cardiff-by-the-sea, Califorania, when he filed his petition in this case. Susan M. Granger's legal residence was in Leucadia, California, at that time and she is a party to this proceeding only because she filed a joint Federal income tax return for 1975 with the petitioner. In 1975 the petitioner was employed by Vons Grocery Company, a supermarket chain, as a Fifth Key Carrier in a grocery store. A Fifth Key Carrier performs the duties of checking out customers, shelf maintenance, ordering inventory, and assuming the store manager's role when the manager is absent. A Fifth Key Carrier is regarded as being on the lower management level of a food retail store. A store manager at Vons Grocery Company has supervisory responsibility for customer relations, inventory management, cash control, security property management, and employee morale. A store manager for Vons is called a First Key Carrier. Below the store manager in descending order of supervisory and management responsibility are the Second, Third, Fourth and Fifth Key Carriers. *523 Petitioner worked the night shift at Vons while he attended the Food Marketing Management Program. Since no store manager was on duty at night the petitioner performed the duties of store manager and supervised 10 employees. Petitioner attended the University of Southern California Food Marketing Management Program from September 1975 through June 1, 1976. He obtained a Certificate in Food Marketing Management on June 3, 1976. The Food Marketing Management Program was designed to be either an area of emphasis for a Bachelor of Science degree in Business Administration, or a non-degree program leading to a Certificate in Food Marketing Management. The Food Marketing Management Program consisted of the following courses: 1975
1976
1. Food Retailing
6. Quantitative Analysis I
2. Food Marketing Management
7. Food Retailing Management
3. Analysis of Food Industry
8. Problems of Food Industry
4. Food Distribution Administration
9. Management Cost Analyses
5. Management Communications
The contents of some of the courses taken by petitioner in 1975 are described as follows: 310 Food Marketing Management (4) Manager's role in problem solving, *524 decision making, and communicating as he deals with superiors, subordinates and peers. Uses the USC Supermarket Management Simulation. 315 Food Retailing (4) Policies and practices related to the management of supermarket operations covering site location, organization, financing, corporate policy, and international information and control systems. 420 Food Retailing Management (4) Strategic techniques of merchandising, pricing, and distributing products in the food industry with emphasis on new product development, including market segmentation and positioning. 450 Problems of the Food Industry (4) Application of marketing research techniques to the special requirements of the food industry. Students are given the opportunity to actually conduct a field research project. 302 Management Communications (4) Communication theory, practices, and techniques essential to informing employees and external publics; intrafirm communication; development of skill in presenting oral and written case solutions. Vons Grocery Company did not require the petitioner to attend the Food Marketing Management Program. Petitioner was later promoted by Vons to higher key carrier positions *525 until he became a full-fledged, daytime store manager, i.e., First Key Carrier. He is presently manager of labor scheduling for Vons. Petitioner incurred expenses of $1,422 in connection with his attendance in the Food Marketing Management Program in 1975. On his Federal income tax return for 1975 the petitioner claimed $1,780 as a deduction for education expenses. The claimed deduction was disallowed by respondent. ULTIMATE FINDINGS OF FACT 1. The courses taken by petitioner in the Food Marketing Management Program improved his skills required in performing his duties as a lower level food retail management employee.
2. The courses taken by petitioner in the Food Marketing Management Program were not part of a program of study which led to qualifying him for a new trade or business. OPINION Section 162(a) allows a deduction for all ordinary and necessary expenses of carrying on a trade or business. Under section 1.162-5, Income Tax Regs., [2] educational expenditures which meet certain criteria are considered deductible business expenses. In order *526 to be deductible as a business expense, education which is not undertaken to meet the express requirements of a taxpayer's employer must be shown to maintain or improve the skills required by the individual in his employment or other trade or business. However, under the provision of section 1.162-5(b)(3), Income Tax Regs., even though the education does meet the express requirements of the taxpayer's employer or does improve the skills of a taxpayer in his employment or other trade or business, the expenses are not deductible if they are for education which is part of a program of study leading to qualifying the taxpayer in a new trade or business. *527 Here the parties have stipulated that Vons Grocery Company did not require petitioner to take the Food Marketing Management Program. Consequently, the petitioner has the burden of establishing that the courses he took improved his skills as a Fifth Key Carrier so that he could move up the rungs of the retail food management ladder. On this record we think he has carried that burden. He has convinced us that the educational courses he took bore a substantial and direct relationship to the skills he needed in his ascension in the field of retail food management. See and compare Carroll v. Commissioner,51 T.C. 213, 218 (1968), affd. 418 F.2d 91 (7th Cir. 1969). What he studied honed his knowledge of food retail operations and improved his managerial capabilities as a working member of the Vons Grocery Company's management team. He was already serving as the night store manager when he began his specialized studies. The content and scope of the courses taken by petitioner were specifically designed to provide managerial techniques and financial problems and practices at the store manager level. As indicated in our ultimate findings, we also *528 conclude that petitioner's educational expenses in the field of retail food management were not part of a program of study leading to qualifying him for a new trade or business. As a Fifth Key Carrier, the petitioner was performing the full range of duties as manager of the night shift when he decided to attempt to improve his skills by enrolling in the Food Marketing Management Program. At all times from 9 p.m. to 5 a.m. he was a "manager" in his decisions and actions. We do not view the progression of petitioner from the fifth to the first level of retail food store management as constituting a change in his trade or business. For example, someone who progresses from a personnel assistant to an assistant personnel director and finally to the personnel director does not change his trade or business in any technical or practical sense. A change in duties is not considered a new trade or business if the new duties involve the same general type of work as that involved in the person's present employment. Section 1.162-5(b)(3), Income Tax Regs.
In our judgment *529 the situation in this case is analogous to Examples (3) and (4) of section 1.162-5(b)(3)(ii), Income Tax Regs.[3] This petitioner was simply upgrading his qualifications in his business of being a manager of a retail food store. *530 To reflect the conceded adjustment and our conclusion on the disputed issue, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. SEC. 1.162-5 Expenses for Education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate or compensation. (b) Nondeductible educational expenditures--(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. * * * (ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. * * *
(3) Qualification fr new trade or business.↩ (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * *
3. Example (3). B, a general practitioner of medicine, takes a 2-week course reviewing new developments in several specialized fields of medicine. B's expenses for the course are deductible because the course maintains or improves skills required by him in his trade or business and does not qualify him for a new trade or business. Example (4). C, while engaged in the private practice of psychiatry, undertakes a program of study and training at an accredited psychoanalytic institute which will lead to qualifying him to practice psychoanalysis. C's expenditures for such study and training are deductible because the study and training maintains or improves skills required by him in his trade or business and does not qualify him for a new trade or business. See also Carlucci v. Commissioner,37 T.C. 695 (1962), involving an industrial psychologist, who took additional courses; Ciorciari v. Commissioner,T.C. Memo. 1963-162, involving a housing administration assistant who took courses in housing and public administration; Glasgow v. Commissioner,i T.C. Memo. 1972-77, affd. per curiam 486 F.2d 1045 (10th Cir. 1973), involving a minister who obtained a college degree; Rev. Rul. 69-199, 1969-1 C.B. 51, involving a Navy captain engaged in personnel administration who obtained a Masters Degree in Personnel Administration; Rev. Rul. 74-78, 1974-1 C.B. 44↩, involving a dentist who took graduate studies in orthodontics.