Keith W. Shaw and Mary L. Shaw v. Commissioner.
Shaw v. Commissioner
Docket No. 5186-65.
United States Tax Court
T.C. Memo 1969-120; 1969 Tax Ct. Memo LEXIS 179; 28 T.C.M. (CCH) 626; T.C.M. (RIA) 69120; June 16, 1969, Filed *179 During World War II petitioner had been a pilot in the Army Air Force. He is now a major in the Air Force Reserve in a non-flying status. During the taxable years 1961 and 1962, he was an osteopathic physician and surgeon. In July 1960, petitioner was appointed a junior medical examiner by the Bureau of Aviation Medicine of the Federal Aviation Agency (FAA), which position he held during the taxable years. Upon appointment petitioner immediately resumed his flying activities and continued them during the taxable years. The FAA has no requirement that its medical examiners be qualified pilots. It did, however, encourage its examiners to fly as it felt that flying activities definitely increased their proficiency as examiners. About two-thirds of the FAA examiners were also pilots. During 1961 and a part of 1962, petitioner rented the aircraft used in his flying activities. In June 1962, petitioner and three other individuals purchased the airplane previously rented. In their returns petitioners deducted $379 as flying expenses in 1961, $967 as flying expenses in 1962 and $652 as depreciation of the airplane in 1962, all of which were disallowed. Respondent now concedes that $60.70 *180 of the $379 deducted in 1961 and $352 of the $1,619 deducted in 1962 are deductible as business expenses of petitioner's regular medical practice not connected with the FAA and petitioners concede that $303.40 of the $1,619 deducted in 1962 is personal and nondeductible. Held, the balance of the $379 is deductible in 1961 as an ordinary and necessary business expense under section 162(a), I.R.C. 1954, and section 1.162-5 (a)(1), Income Tax Regs., because it was paid for maintaining or improving skills required by the taxpayer in his employment. Held, further, petitioner has failed to prove that any part of the remaining $963.60 of the $1,619 deducted in 1962 is deductible in 1962. M. L. Borawick, for the petitioners. Millard D. Lesch, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the calendar years 1961 and 1962 in the amounts of $84 and $414.40, respectively. Petitioners have assigned error as follows: The commissioner has assessed taxes against income without regard to proper costs claimed as (1) airplane expense, and (2) airplane depreciation. On line 15e, page 1 of petitioners' returns for 1962 petitioners claimed an Investment Credit (Form 3468) of $58. On page 1 of the Statement attached to the deficiency notice respondent said: It is determined that your investment in an airplane does not constitute " Section 38 property" and therefore the investment credit claimed on your 1962 return in the amount of $58.00 is *182 disallowed. Petitioners did not assign the disallowance as an error, but in the prayers for relief petitioners prayed "that in determining the amount of tax consequence for the years in question petitioners carryback of 627 investment credit from 1963 should be taken into consideration." Paragraph 10 of the stipulation of facts filed at the trial states: 10. The parties agree that the petitioners are entitled to an unused investment credit carryback from 1962 amounting to $1,761.20. Nothing was said in the opening statements at the trial regarding investment credit. On page 2 of the petitioners' brief it is stated: "The parties further agree that the parties are entitled to an unused investment credit carryback from the tax year 1962 in the sum of $1,761.20." In respondent's reply brief respondent objected to this statement, saying: The unused investment credit carryback should be "to" the tax year 1962, not "from" the tax year 1962. This same correction should be made on the Stipulation of Facts, paragraph 10. Petitioners did not file a reply brief. Effect will be given to the correct investment credit adjustment in the recomputations to be made under Rule 50. *183 Findings of Fact Some of the facts were stipulated. The stipulation, together with all of the exhibits attached thereto, is incorporated herein by reference. Petitioners are husband and wife who resided in Des Moines, Washington, at the time of the filing of the petition. They filed joint Federal income tax returns for the calendar years 1961 and 1962 with the district director of internal revenue, Tacoma, Washington. Keith W. Shaw will hereafter be referred to as petitioner. His wife, Mary L. Shaw, is a petitioner only because she filed joint income tax returns with her husband for the years in question. During the years in question, petitioner was an osteopathic physician and surgeon and owned certain investment property. Petitioner had been a pilot in the Army Air Force for a period of approximately five years, during which time he became qualified as a pilot of jet and propeller-driven aircraft. Following completion of his medical education he was licensed to practice in the State of Michigan and did, in fact, practice in Ann Arbor for a brief time prior to establishing his practice at Des Moines, Washington. Petitioner at the present time is a major in the Air Force Reserve *184 in a non-flying status. The Federal Aviation Agency (FAA) is empowered and charged with the responsibility of issuing airmen certificates to pilot applicants. Such certificates specify the capacity in which the applicant is authorized to serve in operating an aircraft. The FAA has established the Bureau of Aviation Medicine which designates physicians and surgeons who have qualified by certain training to identify themselves as aviation medical examiners. The FAA will not accept certificates signed by the applicant's personal physician but requires examination by doctors designated by the FAA. Periodic physical examinations are made of qualified pilots by aviation medical examiners to determine whether the applicant is able to perform the duties pertaining to the position for which application is made. During the years in question petitioner was designated by the FAA as a junior aviation medical examiner. As such he was qualified by the FAA to give medical examinations only for Class 2 (commercial pilots) and Class 3 (private pilots). Class 2 pilots had to have their licenses renewed every year and Class 3 pilots had to have theirs renewed every two years. The usual fee for *185 a physical examination is $10. In 1961, petitioner gave 29 physicals and about 30 percent more in 1962. His income from this source was approximately 1 percent of his income from his regular medical practice. Petitioner, however, was able to generate a considerable amount of other medical business due to these physicals. The FAA has no requirement that its aviation medical examiners be qualified pilots. The medical newsletter of the Bureau of Aviation Medicine for the months of September and October 1960 includes the following pertinent statement: The civil air surgeon encourages flying by all interested designated aviation medical examiners. It is felt that flying activities definitely increase their proficiency as examiners. * * * In 1960, Federal Air Surgeon James E. Goodard, M.D., encouraged petitioner to fly for the reason that it would make him a better examiner. On August 15, 1966, Federal Air Surgeon Whom It May Concern" the body of which was as follows: 628 Keith W. Shaw, D.O., Des Moines, Washington, AME No. 6217-46-1, has been an aviation medical examiner for the Federal Aviation Agency since July 1960. In this capacity, he is required to have sound knowledge, *186 experience or understanding of aviation medicine. As Federal Air Surgeon, I have encouraged aviation medical examiners to maintain their proficiency as pilots and to exercise any other aviation activities which will assist them in attaining the aforementioned objectives. Between 1956 and 1960, petitioner did very little flying. He resumed flying regularly in the spring of 1960 just prior to his appointment as a junior aviation medical examiner. The doctor who was second in command of the Aviation Medicine Bureau encouraged petitioner to fly because it would improve his proficiency as an examiner. Bulletins issued by the FAA to its medical examiners have encouraged the examiners to maintain their skill and proficiency by flying. A physician who himself flies makes a better medical examiner because of an easier rapport with the pilot, and the physician's knowledge, obtained through personal flying, acquaints him with habits which might lead to fatal accidents. Approximately two-thirds of the FAA examiners were also pilots. During the taxable years 1961 and 1962, petitioner logged 44 hours, 55 minutes, and 46 hours, 49 minutes, respectively, as follows: 1961
Starting Point
Destination
Time
5-13
Boeing (Seattle)
Local
0:40
5-24
Boeing (Seattle)
Local
1:00
6-9
Boeing (Settle)
Local
0:30
6-10
Boeing (Seattle)
Local
0:45
6-11
Boeing (Seattle)
Eugene & Return
3:40
6-14
Boeing (Seattle)
Eugene & Return
3:30
6-18
Boeing (Seattle)
Local
0:25
6-24
Boeing (Seattle)
Stanford, Mont.
8:10
7-12
Boeing (Seattle)
Yakima, Wash.
1:50
8-18
Boeing (Seattle)
Reno, Nevada
4:05
8-20
Reno
Boeing
4:20
10-19
Boeing
Crescent City
3:40
10-20
Crescent City
Los Angeles
4:50
10-22
Los Angeles
Boeing 7:30
TOTAL
44:55
1962
3-28
Boeing
Yakima
2:00
4-11
Boeing
Ocean Shores
1:50
4-16 4-23
Boeing
Ann Arbor, Mich
30:34
5-2
Boeing
Ocean Shores
1:35
7-11
Boeing
Ocean Shores
1:45
8-22
Boeing
Ocean Shores
1:30
9-18
Boeing
Ocean Shores
1:40
9-29
Boeing
Eugene
4:05
11-14
Boeing
Ocean Shores 1:50
TOTAL
46:49
*187 To maintain proficiency one should fly 40 to 50 hours per year. The FAA requires that a private or commercial pilot will have made five take-offs and landings within the last 90 days if he is going to carry passengers. The FAA requires all air medical examiners to attend frequent seminars for the purpose of being brought up-to-date on current developments in the field of aviation and aviation medicine. In 1960, petitioner, along with nine other individuals, organized a corporation, Chinook Air Charters, Inc., which leased a fourpassenger, 180 HP, Mooney aircraft and intended to operate such aircraft as an air taxi service with the individual organizers 629 to serve as pilots when required. Petitioner's 1961 plane expense was incurred in renting the aircraft from Chinook Air Charters, Inc. In June 1962, petitioner and three other individuals purchased the aircraft which had been leased by Chinook Air Charters, Inc., each investing $2,500 in the acquisition of the plane. Thereafter, the direct flight expenses were paid by each individual and indirect expenses were shared equally. Petitioner claimed a flying expense deduction for the year 1961. Similar deductions were claimed *188 in 1962 for flying expenses and airplane depreciation. The following statement was attached to each of the returns: I am a designated medical examiner for the Federal Aviation Agency and as such am encouraged by the Civil Air Surgeon to participate in flying activity to maintain or increase my proficiency as an examiner. Since this adds to my professional ability and knowledge I have deducted the following expenses. The expenses claimed are detailed as follows: 1961
1962
Jeppeson Airway Manual
$ 42
$ 42
Jeppeson Airport Directory
16
22
Parachute maintenance
43
10
Fuel
158
338
Rental, 24 hrs. at $5per hour
120
0
Federal Aviation Agency seminar
0
66
Merrell ground school refresher
0
65
Engine overhaul
0
$ 350
Insurance & tie down, 6 months 0
140
Sub-totals
$379
$1,033
Depreciation 0
652
Totals $379
$1,685 The $66 deduction in 1962 for the Federal Aviation Agency seminar was allowed by respondent as a business expense. The remainder of the flying expense deductions of $379 in 1961 and $967 ($1,033 less $66) in 1962, and depreciation of $652 in 1962, was disallowed in full. In a statement attached to the deficiency notice *189 the disallowances were explained as follows: (b) It is determined that the deduction claimed on your return of $379.00 for airplane expense is not allowable because you have not established that you are entitled to such a deduction. (b) It is determined that the deductions claimed on your return of $967.00 for airplane expense and $652.00 for airplane depreciation are not allowable because you have not established that you are entitled to such deductions. Petitioners explained the deduction for depreciation in their 1962 return as follows: Kind of Property
Cost
DateAcquired
Deprecia- tion PriorYears
Method
Lifeor Rate
Deprecia-
tion
Us ed airplane * * * cost 2,500 minus 58 for 7% of qualified investment credit
2,442
6-19-62
0
DB
4
652
Paragraphs 7, 8 and 9 of the stipulation of facts are as follows: 7. Of the total of $379 deducted by petitioners in 1961 as flying expenses, only the fuel costs of $158.00 and airplane rental, amounting to $120 were "direct" costs. Such charges are the direct cost of flying the aircraft used by Dr. Shaw in 1961 for 24 flight hours. Included in such flight time were 7 hours and 10 minutes of flight *190 time to Eugene, Oregon, to attend a medical convention in 1961. Two trips, down and return, were made. The parties are now in agreement that the actual cost of such flights, and the prorated share of over-all expenses of flying in 1961, is deductible by the petitioners as a traveling expense in that year. The parties agree that such deduction is $60.70. The remainder of the $379 deducted by petitioners in 1961, relating to the cost claimed by petitioners as necessary to maintain Dr. Shaw's flight "proficiency" as a pilot and an aviation medical examiner is still in controversy. 8. In 1962, the petitioner Dr. Shaw made six trips to Ocean Shores, Oregon to inspect investment property. Total flight time for the trips was divided between a rental airplane (three hours, 25 minutes), and the airplane of which Dr. Shaw was a part owner (six hours, 45 minutes). The parties now agree that the expenses of such trips are deductible in 1962 as business expenses, and that such total deduction is $352.00. 9. In 1962 the petitioner Dr. Shaw rented the aircraft mentioned above, and flew to Ann Arbor, Michigan to attend the funeral of his father-in-law. Total flight time for the trip and return *191 came to 30 hours, 34 minutes. The petitioners agree that the cost of such flight in 1962, amounting to $303.40 is not deductible. The remainder of the 1962 deduction for flying expenses, amounting to $963.60, is still in controversy. Such amount the petitioners contend represents the cost of maintaining Dr. Shaw's proficiency as a pilot and as an aviation medical examiner. 630 Opinion The only issue we have to decide is whether petitioners are entitled to deduct the remaining $318.30 of flying expense in 1961 and the remaining $963.60 of flying expense and depreciation in 1962 as ordinary and necessary expenses and depreciation under sections 162 and 167 of the Internal Revenue Code of 1954. [1]
The respondent's *192 determination is presumed to be correct and the burden of proof to show that he erred is upon petitioners. Rule 32, Rules of Practice of this Court; Burnet v. Houston, 283 U.S. 223; Welch v. Helvering, 290 U.S. 111; Sandt v. Commissioner, 303 F. 2d 111 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court. For reasons later given, we think petitioners have met that burden for 1961 but not for 1962. The applicable regulations under section 162[2] are section 1.162-5 of the Income Tax Regulations, issued as T.D. 6291, approved April 3, 1958 (1958-1 C.B. 63, 67, 86), which were amended by T.D. 6918, approved April 26, 1967 (1967-1 C.B. 36-41). In Rev. Rul. 68-191 (1968-1 C.B. 67-68) it was stated that: The new regulations will not be applied in asserting deficiencies or denying claims for refund for taxable years beginning before January 1, 1968. However, taxpayers may rely on either the new regulations, or prior regulations *193 to claim deductions for such taxable years. See Fleischer v. Commissioner, 403 F. 2d 403 (C.A. 2, 1968), affirming a Memorandum Opinion of this Court, where the Circuit Court "considered the merits of taxpayer's claims under both the 1958 and 1967 regulations" citing T.I.R. No. 964, which was the basis for Rev. Rul. 68-191, supra. We, likewise, will consider the merits of petitioners' case under both regulations. The material provisions of both the 1958 and 1967 regulations are in the margin. [3]
*194 631 Whether expenditures are for education undertaken primarily for the purpose of "maintaining or improving skills" required by the taxpayer in his employment must be determined from all the facts and circumstances involved. Section 1.162-5(a), 1958 Income Tax Regs.; see also Welsh v. United States, 329 F. 2d 145, 146 (C.A. 6, 1964); Condit v. Commissioner, 329 F. 2d 153, 154 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court; and N. Kent Baker, 51 T.C. 243, 247. In the latter case we said: "Because the question is essentially factual, previously decided cases are of little precedential value." Cf. Cosimo A. Carlucci, 37 T.C. 695; James A. Carroll, 51 T.C. 213, on appeal (C.A. 7, Jan. 29, 1969); Lawrence H. Bakken, 51 T.C. 603, on appeal (C.A. 9, April 11, 1969); and Walter G. Lage, 52 T.C. - (April 22, 1969). The evidential facts are set out in our findings. Whether we apply the 1958 or 1967 regulations we think petitioner has shown by uncontradicted evidence that he undertook the flying activities here in question for the primary purpose of maintaining or improving skills required in *195 his employment as a junior medical examiner and that they did maintain or improve his skills required in that employment. Since petitioner had to pass upon an applicant's qualifications to fly an airplane there certainly was a nexus between petitioner maintaining his own proficiency in flying and that of his job in passing upon the qualifications of others. Certainly the FAA so considered it. The evidence showed that to maintain one's own proficiency to fly one should fly between 40 to 50 hours per year. Since petitioner did not exceed this requirement, it cannot reasonably be said that petitioner was flying simply for "personal purposes" as that term is used in section 1.162-5(b) of the 1958 regulations. Section 1.162-5(a) of these regulations provides: If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. The evidence in the instant case shows that approximately two-thirds of the FAA examiners were also pilots. Petitioner has shown that because he maintained his flying skills *196 he was better equipped to pass on the qualifications of an applicant for a pilot's license. He has shown that the leaders in the field of air medicine have encouraged medical examiners to fly and to maintain their flying skills as this made them better examiners. When asked at the trial of this case to be specific as to why his flying activities made him a better examiner, petitioner testified as follows: Q. Would you be specific * * *? A. Yes, the most dramatic case was a man who came to me and applied for a second class medical certificate. He had been involved in a fatal accident some years before. On examining him and talking to him and being familiar with the aircraft that he was flying, one thing led to another until I decided that this man was a hazard due to psychiatric reasons, and I refused his certificate. He went through all of the appeals, procedures available, and I was upheld in it. The only reason that I had for denying him was because I was a pilot and I knew that he was not doing things properly in this accident. Q. What, specifically, wasn't he doing properly that you knew because of your flying skills? A. The maneuver he was engaged in at low altitude. *197 Q. Would you have known this had you been an MD, or a D.O. and not a flyer? A. No, no way possible. The 1967 regulations were intended to be more liberal in favor of the taxpayer than the 1958 regulations. S. Rept. No. 1983, 85th Cong., 2d Sess. (1958-3 C.B. 922, 1032). For one thing they do not require the taxpayer to establish his "primary" purpose in undertaking the education. James A. Carroll, supra (p. 219). All the taxpayer needs to show is that the education maintains or improves skills required by him in his employment which are not expenditures of a type described in paragraph (b) (2). "Minimum educational requirements" or (3) "Qualification for new trade or business" of section 1.162-5. [4] This we think petitioner 632 has done. See also paragraph (c) of the same section set out in our footnote 3, regarding the taking of refresher courses to improve skills. *198 In his brief the respondent cites one case in support of his position, namely, Conover, Jr. v. Commissioner, 380 F. 2d 380 (C.A. 3, 1967), affirming a Memorandum Opinion of this Court. This case is distinguishable upon its facts. The evidence there clearly indicated that the expenses Conover sought to deduct were not of the kind provided for in section 1.162-5(a)(1) or (2) of the 1958 regulations but were for the purpose of attaining a new position and as such were not deductible under the provisions of section 1.162-5(b) of the same regulations and section 262 of the Code. [5]
We hold that the flying expenses of $318.30 still in controversy for 1961 are deductible as an ordinary and necessary business expense under section 162(a), Internal Revenue Code of 1954, and section 1.162-5(a)(1), Income Tax Regs., approved in 1958 and amended in 1967. Regarding the year 1962 we think petitioner has failed to prove the amount deductible. For *199 that year the respondent had disallowed flying expenses of $967 and depreciation of $652, claimed as deductions by petitioners on their 1962 return. It is not too clear how petitioners arrived at the $652 of depreciation. In paragraphs 8 and 9 of the stipulation set out in our findings, the parties have agreed that $352 is deductible; that $303.40 is not deductible; and that "The remainder of the 1962 deduction for flying expenses, amounting to $963.60 is still in controversy." We do not know how much depreciation, if any, was included in the amounts of $352 and $303.40, or what part of the $963.60 represents flying expenses and what part represents depreciation. Under the circumstances we sustain the repondent's determination for 1962, except for the $352 conceded by the respondent. In passing it may be noted that it is possible that the 1962 issue will become moot, depending upon the effect given under Rule 50 to paragraph 10 of the stipulation set out in our introductory statement. In the deficiency notice the total tax liability determined by the respondent for 1962 was $1,727 whereas the credit mentioned in paragraph 10 of the stipulation is $1,761.20. Decision will be entered *200 under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business * * *.↩
2. All Code references hereinafter made are to the Internal Revenue Code of 1954 unless otherwise specifically stated.↩
3. 1958 Regs., T.D. 6291 (1958-1 C.B. 63, 67). § 1.162-5 Expenses for Education. - (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspiration or other personal purposes of the taxpayer. * * * 1967 Regs., T.D. 6918 (1967-1 C.B. 36-41). § 1.162-5 Expenses For Education. - (a) General rule. - Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures. - (1) In general. - Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. - * * * (3) Qualification for new trade or business. - * * * (c) Deductible educational expenditures. - (1) Maintaining or improving skills. - The deduction under the category of expenditures for education which maintains or improves skills required by the individual in his employment or other trade or business includes refresher courses or courses dealing with current developments as well as academic or vocational courses provided the expenditures for the courses are not within either category of nondeductible expenditures described in paragraph (b) (2) or (3) of this section.↩
4. A good case falling under (b)(2) is Condit v. Commissioner, 329 F. 2d 153 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court; a good case falling under (b)(3) is Sandt v. Commissioner, 303 F. 2d 111↩ (C.A. 3, 1962), affirming a Memorandum Opinion of this Court.
5. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩